IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF NORDEX ENERGY SE & CO. KG FOR AN ORDER TO CONDUCT DISCOVERY IN A FOREIGN PROCEEDING : : : : : **Movant** : v. : : **SKF USA, INC.,** : : **Respondent** : | MISCELLANEOUS ACTION NO. 24-mc-18 |

# ORDER

**AND NOW**, this 8th day of May, 2025, upon consideration of Respondent SKF USA, Inc.'s Motion to Vacate the May 31, 2024 Order Granting Nordex Energy SE & Co. KG's 28 U.S.C. § 1728 *Ex Parte* Application (ECF No. 21), Applicant/Movant Nordex's Response in opposition thereto and the parties' further filings in support of their respective positions, I hereby find as follows:

1.  Nordex Energy SE & Co. KG, formerly known as Nordex Energy GmbH ("Nordex Germany" or "Movant") is a German corporation engaged in the manufacture of wind turbines used in the renewable energy industry.[1] Nordex Germany is a subsidiary of Nordex SE, a publicly

---

[1] The facts recited in this Order are taken from (1) the Sworn Declarations of Movant Nordex Germany's German counsel in this matter, Phillipp Caspari and Dr. Simon Manner and the exhibits attached thereto in support of its *Ex Parte* Application for an Order to Conduct Discovery Pursuant to 28 U.S.C. § 1782 for Use in Foreign Proceedings; (2) the Sworn Declaration of Movant's expert witness, Dr. h.c. Astrid Stadler and the attached exhibits in support; and (3) the Sworn Declarations of Benjamin Ryherd, an Application Engineer Specialist in Renewable Energy for SKF USA, and Dr. Stefan Rutzel, counsel for SKF USA, which are annexed in support of SKF USA's Motion to Vacate the May 31, 2024 Order granting Nordex's 28 U.S.C. § 1782 *Ex Parte* Application.

1

traded European stock corporation which is the holding company of the Nordex Group, a world leader in renewable energy. (Decl. of Dr. Simon Manner in Supp. of *Ex Parte* Application for Order Pursuant to 28 U.S.C. § 1782, Ex. B, ¶ 4, ECF No. 1). Nordex Germany buys certain wind turbine component parts, including bearings, from SKF GmbH ("SKF Germany").

2. Nordex Germany and SKF Germany are parties to two agreements relevant here: a Quality Assurance Agreement ("QAA") dated January 23, 2017, and a Framework Purchasing Agreement ("FPA") entered into on July 20, 2017. Pursuant to these agreements, Nordex Germany procured main shaft bearings from SKF Germany. Main shaft bearings are structural components in the wind turbine which support the main shaft as it turns to generate electricity. Nordex Germany and its affiliates also procured main shaft bearings from SKF Germany and its affiliates under other agreements as well. (Id. at ¶¶ 4-6). The main shaft bearings were to be installed in many of Nordex's windfarms worldwide, including some in the United States. (Id. at ¶ 7).

3. Subsequent to the parties' entering the agreements, the main shaft bearings began failing at Nordex windfarms. (Id. at ¶ 8). Because SKF Germany has allegedly denied all responsibility and refused to reimburse the costs for repairs and replacement as called for under the agreements, Nordex Germany initiated "pre-trial proceedings for the taking of evidence" pursuant to Section 485 of the German Code of Civil Procedure ("ZPO") to obtain an independent expert opinion on the root cause of the failures in the main shaft bearings. Those proceedings are ongoing before the Regional Court of Hamburg, Germany. (Id. at ¶¶ 8, 10). Nordex Germany avers that should the parties not settle their dispute by the conclusion of these pre-trial evidentiary proceedings, it "will immediately file an action for monetary relief against SKF Germany for breach of the Agreements before the Hamburg courts . . . if SKF Germany does not accept its responsibility for the main bearing failures." (Id. at ¶ 11).

4.      Section 485(2) of the ZPO provides: "wherever a legal dispute is not yet pending, a party may petition that an expert prepare a written report if it has a legitimate interest in determining:  1. The state of a person or the state or value of an object; 2. The cause of personal injury, property damage, or a defect; 3. The expenditure required to remedy a personal injury, property damage, or defect." (Decl. of Dr. Stefan Rutzel in Supp. of SKF USA's Mem. of Law in Supp. of Mot. to Vacate, Ex. 1, ¶ 4, ECF No. 21).  "If the results of the expert opinion do not induce the Parties to resolve their dispute amicably, Nordex may initiate a legal proceeding to decide the merits of [its] claims." (Id. at ¶ 6).  If instituted, this would be the "Main Proceeding." (Id.).

5.      German civil procedure differs significantly from American civil procedure, particularly with respect to the taking of discovery.  Unlike the American legal system, German civil procedural law does not recognize the concept of pre-trial disclosure.  (Decl. of Dr. Astrid Stadler in Supp. of Nordex Energy SE & Co. KG's Mem. of Law in Opp. to SKF USA's Mot. to Vacate, Ex. A, ¶ 7, ECF No. 26).  Instead, at the outset of the proceedings, the parties are expected to submit the documentary evidence they intend to use in support of their claims or defenses, but otherwise, the parties generally have no obligations to disclose any documents or produce any evidence to one another.  (Id. at ¶¶ 7, 9).  However, in rare instances where the adversary itself refers to documents in its pleadings or the evidence-seeking party has an independent right to possession of or access to the documents being sought, a German court can order the production of those documents.  (Id. at ¶ 10; Manner Decl. at ¶ 17 (citing § 422 ZPO)).

6.      Under Section 355 of the ZPO, all evidence-taking, including examination of witnesses, must generally occur in front of the German trial court.  This is known as the German "principle of immediacy," and its underlying rationale is that the judges charged with deciding the

case should do so based upon their own in-person assessments and impressions of the credibility of the witnesses and evidence presented directly to them.  (Id. at ¶¶ 8-9).  German law provides only for very narrow exceptions from this principle and only rarely do its courts instruct that a witness may be examined by one of its members in the absence of the other members of the trial court.  (Id. at ¶ 9-10 (citing §§ 361, 362, 375 ZPO)).

7. On May 2, 2024, the German court entered an evidentiary order in the pre-trial expert evidentiary proceeding directing that an independent expert answer a number of questions relating to the cause of the failure of certain specific main bearings identified by their serial numbers which Nordex purchased from SKF Germany.  (Id. at ¶ 5; Decl. of Benjamin Ryherd in Supp. of Mot. to Vacate, Ex. A, ECF No. 21).  Asserting that Nordex USA had seen numerous main bearings fail at five of seven windfarms in North America and had engaged with SKF USA regarding these failures, Nordex Germany believed that SKF USA was in possession of documents and information "critical to the events underlying the German proceedings but will not be a party to those proceedings." (Ex Parte Application for Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings, Ex. A, Decl. of Philipp Caspari, ¶¶ 14-16, ECF No. 1).  Nordex Germany therefore moved, ex parte, in this Court to take discovery pursuant to 28 U.S.C. § 1782 because it was "the only avenue by which [it could] obtain evidence that could be essential to the prosecution of its claims in the German Proceedings." (Id. at 2).  I granted the Application on May 31, 2024, "without prejudice to the right of any other party to raise any appropriate challenge to the subpoenas or the propriety of Movant's application under § 1782." (Order of May 31, 2024, ¶ 3, ECF No. 12).  SKF USA filed its Motion to Vacate on August 8, 2024.  It is now fully briefed and ripe for determination.

4

8. 28 U.S.C. § 1782 "was designed to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation and put the United States into the leadership position among world nations in this respect." In re Biomet Orthopaedics Switz. GmbH, No. 17-3787, 742 F. App'x 690. 695 (3d Cir. Aug. 6, 2018) (quoting In re Bayer AG, 146 F.3d 188, 191-192 (3d Cir. 1998)). The statute confers discretion on federal district courts to order discovery for foreign litigants subject to three conditions: (1) the person from whom discovery is sought "resides or is found" within the district; (2) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (3) the application is made by an "interested person." SPS Corp. I v. GM Co., 110 F.4th 586, 590-591 (3d Cir. 2024) (quoting 28 U.S.C. § 1782(a)). These statutory requirements are considered to be "modest prima facie elements," such that "district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." Bayer AG, 146 F.3d at 195.

9. If these statutory conditions are satisfied, the courts then turn to consider the factors outlined in the Supreme Court's seminal case on this issue – Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004). Id. at 591. These are: (1) whether the evidence sought is "within the foreign tribunal's jurisdictional reach," and thus obtainable absent § 1782(a) aid; (2) "the nature of the foreign tribunal, the character of the foreign proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance"; (3) "whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the requests are "unduly intrusive or burdensome." Intel, 542 U.S. at 264-265; SPS, 110 F. 4th at 592.

10.     In issuing the May 31, 2024 Order granting Nordex Germany's *ex parte* application, I found all three of the statutory factors satisfied and that the Intel factors also militated in favor of Nordex Germany's position. I find no reason to change my assessment. First, SKF USA is not a party to the German proceedings; although it is an affiliate of SKG Germany, it is a Delaware corporation with its principal place of business in Lansdale, PA. As such, SKF USA "resides" and is "found" in the Eastern District of Pennsylvania. Given that the information being sought by Nordex Germany from SKF USA is for use in the ongoing German pre-trial expert evidentiary proceeding in the Regional Court in Hamburg, Germany, it is obvious that the second, "for use in a proceeding in a foreign or international tribunal" condition is met here.[2] Finally, since it is Nordex Germany which initiated the "pre-trial proceedings for the taking of evidence" pursuant to Section 485 of the German Code of Civil Procedure, it is clearly an interested party in the § 1782 application.

11.     Applying the Intel factors, the parties do not appear to be disputing that the information and documents being sought by Nordex Germany are outside the jurisdictional reach

---

[2]   SKF USA asserts that "Nordex cannot meet the Section 1782 statutory requirement that the information sought be 'for use' in the German Proceedings with respect to the sought-for deposition," because "German law prohibits the use of deposition testimony in German proceedings altogether." (Mem. of Law in Supp. of SKF USA Inc.'s Mot. to Vacate, 5-6 and Ex. A (Rutzel Decl.)). While the parties agree that German civil procedure does not generally provide for the taking of pre-trial discovery, SKF's assertion is disputed by Nordex Germany's expert, Dr. Astrid Stadler, who observed that "[b]ecause of the increasing importance of Section 1782 proceedings for German civil litigation in recent years, the use of these proceedings and the admissibility of the evidence obtained has been the focus of rich research and many publications in Germany. The clear position of the authors is that German courts will generally accept such evidence and can refuse to do so only under very exceptional circumstances." (Mem. of Law in Opp. to SKF USA Inc.'s Mot. to Vacate, Ex. A (Stadler Decl.) ¶ 26). In any event, as the Supreme Court made clear in Intel: "§ 1782(a) contains no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding." See, Intel, 542 U.S. at 246. I thus see no reason to disturb my earlier finding that the information sought under § 1782 is "for use" in the German proceedings.

of the German courts insofar as they are the property of and in the possession of SKF USA, and are located in the United States. However, SKF USA argues because it "will voluntarily produce any such documents or testimony which such German court deems relevant and admissible," the first Intel factor weighs in favor of vacating the Section 1782 Order. (SKF USA, Inc.'s Mem. of Law in Supp. of Mot. to Vacate, 8).

12. Nordex makes several persuasive points in response to this argument. First, SKF USA's unilateral declaration of willingness to produce the requested materials is in no way binding upon it or enforceable in the German courts; hence it is subject to being revoked at any time. (Stadler Decl. ¶ 22). Second, the offer presupposes that a request for evidence is presented to, and an order of production is issued by the German courts. These events are highly unlikely to occur in light of the nature of Germany's approach to the taking of pre-trial discovery. (Id. ¶ 23). I find these points to be compelling and I see no reason to alter my previous conclusion that the first Intel factor weighs in favor of Nordex's § 1782 Application.

13. Taking the next several Intel factors together, I first find, based on Dr. Stadler's attestations, that notwithstanding the differences between German and U.S. civil procedure and the unique German mechanism of allowing the commencement of pre-trial expert evidentiary proceedings, it appears that Germany will, in fact, accept testimonial and documentary evidence obtained through § 1782 proceedings. See, e.g., Heraeus Kulzer GmbH v. Esschem, Inc., 390 F. App'x 88, 92 (3d Cir. 2010) (German court postponed proceedings before it in Germany specifically to permit § 1782 applicant to pursue discovery requests in the United States). Thus, it does not appear that Nordex's request was an attempt to circumvent German proof-gathering restrictions or its policies and I affirm my previous determination that these factors likewise weigh in favor of granting Nordex's application. (See, e.g., Stadler Decl. ¶ 26).

14. Turning last to the final Intel factor – whether the discovery requests are unduly burdensome or overly broad, I find that on the whole, the information sought appears relevant and proper but agree with SKF USA that the requests for "all documents" or "all communications" sweeps too expansively and is excessively vague. Nordex Germany has agreed to negotiate this issue with SKF USA and I see no reason why the parties cannot resolve this matter themselves. This does not necessitate the vacatur of my May 31, 2024 Order.

15. Finally, "[i]nasmuch as relevant evidence is presumptively discoverable, the party opposing discovery under section 1782(a) has the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application." In re Chevron Corp., 633 F.3d 153, 162 (3d Cir. 2011). Because I find that SKF USA has not met this burden, I properly exercised the discretion afforded me under 28 U.S.C. § 1782(a) and thus decline to vacate my May 31, 2024 Order. Accordingly,

**IT IS HEREBY ORDERED** that the Motion of SKF USA Inc. to Vacate the May 31, 2024 Order is **DENIED.**

                                                    **BY THE COURT:**

                                                    */s/  Mitchell S. Goldberg*

                                                    **Mitchell S. Goldberg,         J.**